**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **WILLIE CHURCH, TDCJ #02202661,** | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 5:24-CV-01388-JKP** |
| **EMMANUEL GRAJEDA, C.O., ET AL.,** | § | |
| | § | |
| ***Defendants*.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment (ECF No. 31) filed by Defendant Emmanuel Grajeda. Plaintiff Willie Church filed a response (ECF No. 37), and Grajeda filed a reply (ECF No. 40). After due consideration of the briefing, the record evidence, and the applicable law, the Court **GRANTS** the motion.

## I. BACKGROUND[1]

This is a civil rights excessive force case filed by a *pro se* prisoner. ECF No. 1. The action arises out of events occurring while Plaintiff Willie Church was confined at the John B. Connally Unit in Kenedy, Texas,[2] and Defendant Emmanuel Grajeda worked as a correctional officer assigned to the building housing Church's cell. *Id.* at 3–5. Church's cell was located within an area of the prison designated as "close custody" security level, which is reserved for inmates determined to be dangerous by prison officials. ECF No. 31-4 (Ex. 3) at 3; ECF No. 31-5 (Ex. 4) at 2. Close custody inmates are subjected to heightened security measures. ECF No. 31-4 (Ex. 3) at 3. They

[1] The factual background is uncontested unless otherwise noted. The Court considers disputed facts in the light most favorable to the non-movant as required through the summary judgment process.

[2] Records from the TDCJ show that Church is currently confined in the Cotulla Unit based on convictions for aggravated robbery, burglary of a habitation, and robbery out of Nueces County. *See* TDCJ Inmate Search - Inmate Details (last visited Oct. 2, 2026).

are confined to their cells for 23 hours per day and are not permitted to voluntarily leave or remove any part of their body from their cells at any time. *Id.* While assigned to the close-custody area, Grajeda was responsible for maintaining security, feeding inmates, conducting inmate counts, and responding to emergencies. *Id.*

On January 23, 2023, Grajeda left the cell block containing Church's cell to respond to an emergency in a different area of the prison. ECF No. 31-5 (Ex. 4) at 2. While Grajeda dealt with the emergency, prisoners within Church's cell block began engaging in prohibited behaviors such as exchanging contraband on lines, lighting fires outside of cells, and "jacking" food tray slots. ECF No. 31-4 (Ex. 3) at 3; ECF No. 31-5 (Ex. 4) at 2. The practice of "jacking" entails wedging an object into the locking mechanism of a food tray slot—an opening built into a cell door to pass food through—thereby preventing the slot from locking. ECF No. 31-4 (Ex. 3) at 3. With the lock disengaged, inmates can push open the barrier covering the slot from inside their cell. *Id.*

The events underlying Church's excessive force claim occurred once Grajeda returned to the close-custody area. These events were captured by TDCJ video footage.[3] *See* ECF No. 31-6 (Ex. 5). The video shows Grajeda walking down a set of stairs and through an entrance on the first floor. *Id.* at 4:49. Church's cell is immediately adjacent to the entrance. *Id.* When Grajeda enters, there is a fire burning at the bottom of a cell door located diagonally opposite from Church's cell on the first floor, as well as a larger fire burning on the third floor. *Id.* Church's food tray slot is jacked open, and he has placed at least one arm through the slot so that his hand hangs outside of his cell. *Id.* As Grajeda walks past Church's cell, Church throws a liquid at Grajeda's back. *Id.* at 4:49–:55. Grajeda assumed the liquid was Church's bodily fluid, based on the common practice of prisoners throwing bodily fluids at guards. ECF No. 31 at 6; ECF No. 31-5 (Ex. 4) at 2–3.

[3] The video footage is not accompanied by audio.

The video clearly depicts Grajeda's reaction. Grajeda immediately turns to face Church, walks to his cell, and then kicks the open tray slot closed. ECF No. 31-6 (Ex. 5) at 4:49–5:00. Grajeda's foot strikes the tray, and the tray in turn hits Church's dangling hands before falling back to the open position. *Id.* at 4:56–5:03. Church keeps his hands hanging through the open slot as Grajeda walks away. *Id.*

After kicking Church's tray slot, Grajeda walks out of the video frame. *Id.* He returns carrying a water cooler. *Id.* at 5:02–:37. He uses water from the cooler to extinguish the fire burning outside the first-floor cell, and then he walks back toward the entrance next to Church's cell. *Id.* at 5:40–6:11. Church again throws a liquid at Grajeda. *Id.* Grajeda pauses and walks to Church's cell. *Id.* at 6:12–:21. He lifts the water cooler and swings it toward Church's cell door, dumping water onto Church's dangling hands.[4] *Id.* The cooler does not make contact with Church. *Id.* Church grabs the cooler as Grajeda moves away from Church's cell, and Grajeda yanks the cooler out of Church's grasp before exiting the cell block. *Id.* at 6:20–:26.

Four days before the incident between Church and Grajeda, Church was involved in an unrelated use of force incident while confined in a different TDCJ unit. ECF No. 31 at 2–4. This previous use of force incident involved Church reaching his hands through his food tray slot and engaging in some sort of struggle with an officer. *Id.* Church sustained injuries from this previous

---

[4] The parties dispute whether water touched Church. Church claims Grajeda dumped water "all over [him]," *see* ECF No. 1 at 4, but Grajeda asserts the cooler was empty when he swung it at Church's cell. ECF No. 31 at 11; ECF No. 40 at 4–5. Ultimately, the video footage contradicts Grajeda's description of the cooler as empty; the video shows that, after Grajeda slings the cooler at Church's cell, a substance spreads across the floor and displaces items next to Church's cell. *See* ECF No. 31-6 (Ex. 5) at 6:20–:25. Thus, after viewing the evidence in the light most favorable to Church, and in the light depicted on video, the Court assumes for the purposes of summary judgment that the cooler was not empty and some amount of water touched Church. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that court should not rely on plaintiff's description of facts where record discredits such description but should instead consider "the facts in the light depicted by the videotape")); *see also Waddleton v. Rodriguez*, 750 F. App'x 248, 254 (5th Cir. 2018) (per curiam) (stating that "[t]his court will not adopt facts that are clearly contradicted by the video").

incident, including swelling and abrasions to his left wrist and right hand, as well as a left forearm deformity and abrasion. *Id.* at 3; ECF No. 31-2 (Ex. 1) at 7.

Following Grajeda's use of force on January 23rd, Church had an appointment with a TDCJ nurse to complete a medical screening for the unrelated use of force incident. ECF No. 31-2 (Ex. 1) at 9. During this appointment, Church complained of injuries to his right hand and left forearm. *Id.* The TDCJ nurse observed "abrasions and edema" on Church's right hand, as well as a left forearm deformity with abrasions and swelling. *Id.*

Church filed an internal grievance against Grajeda, which triggered another medical screening appointment. ECF No. 1 at 6; ECF No. 31-2 (Ex. 1) at 11. During this appointment, Church complained about an injury to his right hand and claimed he was unable to fully open and close his fist. ECF No. 31-2 (Ex. 1) at 11. According to the appointment note, the TDCJ nurse did not observe any swelling, bruising, or deformity to his right hand. *Id.* The nurse also noted that Church could close his fist without difficulty. *Id.*

During a follow-up appointment, Church complained about pain and swelling in his right hand and told the TDCJ nurse he injured his hand on January 23, 2023, when he "got hit by a metal tray slot in his hand." *Id.* at 13. Medical staff observed swelling and tenderness in Church's right hand, as well as decreased flexion in his index finger. *Id.* An x-ray image showed swelling and an "age indeterminate fracture" to the top of Church's right ring finger. *Id.* at 15. TDCJ medical staff provided Church with a splint. *Id.* at 14. By April of 2023, x-ray imagining showed no evidence of a fracture or dislocation but did show "[s]clerosis . . . related to ongoing healing." *Id.* at 23.

Church contends Grajeda engaged in excessive force twice on January 23, 2023: (1) when he kicked Church's open food tray slot; and (2) when he poured water on Church from the cooler. ECF No. 1 at 3–4. Church alleges Grajeda's uses of force caused him "pain [and] agony,"

"emotional distress," and the injuries to his right hand and left forearm documented in his medical records. *Id.* at 4; ECF No. 37 at 4–6.

Grajeda moves for summary judgment, asserting that there are no genuine disputes of material fact regarding excessive force and that he is entitled to qualified immunity. ECF No. 31. Grajeda provides the following summary judgment evidence: (1) Church's TDCJ medical records; (2) a video depicting the unrelated use of force incident between Church and a non-party TDCJ officer; (3) an affidavit from Assistant Warden Esmerejildo Moreno; (4) an affidavit from Grajeda; (5) a video depicting the underlying use of force incident between Church and Grajeda; and (6) an affidavit from TDCJ nurse Krystal Snider. ECF Nos. 31-2 to 31-7 (Exs. 1–6). After Grajeda filed his motion, the Court issued an order instructing Church on his summary judgment burden and directing him to file a response. ECF No. 32. Church filed his response, but he did not attach any evidence to it. ECF No. 37.[5] Grajeda replied. ECF No. 40. The motion is ripe for ruling.

## II. SUMMARY JUDGMENT BURDEN

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

[5] Church refers to various documents in his response, such as documents from a TDCJ internal investigation and prison policies. *See, e.g.*, ECF No. 37 at 2, 8. However, he does not attach any of these documents to his response as evidence. The Court therefore cannot consider the documents in ruling on the present motion. *See* ECF No. 32 (order instructing Church that he has the burden to bring forward evidence to create genuine issue of material fact and explaining that conclusory allegations, unsubstantiated assertions, and speculation are insufficient).

*Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery, or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal citation omitted).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87; *see also* Fed. R. Civ. P. 56(c). Once the burden shifts, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)). Further, should the nonmoving party fail to address or respond to a fact raised by

the moving party and supported by evidence, the court may consider the fact as undisputed and such undisputed facts may form the basis for a summary judgment. Fed. R. Civ. P. 56(e)(2).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. However, when qualified immunity is at issue, "to the extent that any material fact dispute remains after viewing the facts in light of the available video evidence, the court should deny summary judgment on grounds of qualified immunity." *Bagley v. Guillen*, 90 F.4th 799, 800 (5th Cir. 2024).

## III. QUALIFIED IMMUNITY DEFENSE

Generally, the affirmative defense of qualified immunity is an immunity from suit and shields a government official for actions within their discretionary authority when their conduct complies with clearly established statutory or constitutional law of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "Once a government official establishes that his conduct was

within the scope of his discretionary authority, it is up to the plaintiff to show that (1) the official 'violated a statutory or constitutional right,' and (2) the right was 'clearly established at the time.'" *Sweetin v. City of Tex. City*, 48 F.4th 387, 391–92 (5th Cir. 2022) (quoting *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022)). In this case, there is no question that the nature of Grajeda's conduct falls with the scope of his discretionary authority as a correctional officer assigned to maintain security.

Determination of the applicability of the qualified immunity defense thus requires two inquiries: (1) whether the official's conduct violated a clearly established constitutional right or statute, and (2) whether the official's conduct was objectively unreasonable under clearly established law existing at the time of the incident of which a reasonable person would have known*.* *Bey v. Prator*, 53 F.4th 854, 857 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1783 (2023); *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009). If the Court answers both questions in the affirmative, the government official is not shielded from liability based upon qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022). A court need not analyze these prongs sequentially because if either is not satisfied, the government official is entitled to qualified immunity. *Buehler*, 27 F.4th at 981–82. Still, the Fifth Circuit provides guidance that although a district court may "'leapfrog' the first prong and resolve cases solely on the basis that defendants' conduct—even if unlawful—did not violate clearly established law, 'we think it better to address both steps in order to provide clarity and guidance for officers and courts.'" *Id*.

Once a defendant properly raises qualified immunity, the burden is on the plaintiff to establish both prongs of the qualified immunity inquiry. *Id.*; *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Consequently,

when a government official asserts qualified immunity upon summary judgment, the assertion shifts the typical summary judgment burden of proof. *Brown*, 623 F.3d at 253; *see Celotex Corp.*, 477 U.S. at 323. For conduct that is within the scope of the official's discretionary authority, the initial summary judgment burden falls on the plaintiff to demonstrate the inapplicability of qualified immunity by establishing a genuine dispute of material fact on both prongs of the inquiry. *Brown*, 623 F.3d at 252–53; *Poole*, 691 F.3d at 627–28. However, all inferences are still drawn in the plaintiff's favor. *Brown*, 623 F.3d at 253.

**A. Constitutional Violation**

Regarding the first inquiry, the plaintiff must show there is a genuine dispute of material fact whether the defendant violated a constitutional right—that is, a jury could return a verdict entitling the plaintiff to relief for a constitutional injury. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007). Because the summary-judgment burden falls on the plaintiff to demonstrate a genuine dispute of material fact on both prongs of the inquiry, the official is entitled to qualified immunity if the Court determines there is not a genuine dispute that the alleged conduct violated a constitutional right. *Buehler*, 27 F.4th at 981–82; *Poole*, 691 F.3d at 627–28; *Shepard v. Hansford Cnty.*, 110 F. Supp. 3d 696, 707–08 (N.D. Tex. 2015).[6]

**B. Clearly Established Law**

Regarding the second inquiry, the plaintiff "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law."

[6] The Court recognizes that some well-cited caselaw states the inquiry differently as: "the threshold 'constitutional violation question' [is] whether … the officer's alleged conduct violated a constitutional right.… If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because *there is no constitutional violation for which the government official would need qualified immunity*." *Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) (emphasis added).

*Tucker v. City of Shreveport*, 998 F.3d 165, 172–73 (5th Cir. 2021); *Gates v. Tex. Dep't of Protective & Regul. Servs*., 537 F.3d 404, 419 (5th Cir. 2008). The plaintiff has the burden to point out clearly established law, and the Court asks whether the defendant's actions were objectively unreasonable in light of the clearly established law at the time of the alleged constitutional violation. *See Freeman*, 483 F.3d at 411; *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019). To meet this burden, the plaintiff need not identify a specific case, but a body of relevant caselaw in which an officer acting under similar circumstances was held to have violated the Constitution. *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (quoting *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)).

As the Supreme Court held long ago, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The Supreme Court noted in *Harlow* that in most cases, the 'of which a reasonable person would have known' language in the qualified immunity standard does not add anything to the 'clearly established law' requirement because 'a reasonably competent public official should know the law governing his conduct.'" *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (en banc) (quoting *Harlow*, 457 U.S. at 818–19).

The Supreme Court later "refined the qualified immunity standard by defining 'clearly established' in a way that encompasses the 'objective reasonableness' inquiry: To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id*. at 349–50 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Whether qualified immunity

can be invoked turns on the 'objective legal reasonableness' of the official's acts." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (quoting *Harlow*, 457 U.S. at 819). And "the objective reasonableness of an official's conduct [is] measured by reference to clearly established law" as of "the time an action occurred." *Harlow*, 457 U.S. at 818. If the law is not clearly established when conduct occurs, officials cannot "reasonably be expected to anticipate subsequent legal developments, nor could [they] fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.*

The "requirement—that an official loses qualified immunity only for violating clearly established law—protects officials accused of violating 'extremely abstract rights.'" *Ziglar*, 582 U.S. at 151 (quoting *Anderson*, 483 U.S. at 639).

> By defining the limits of qualified immunity essentially in objective terms, [courts] provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow*, 457 U.S. at 819 (omitting footnote and quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

"The clearly established standard does not mean that officials' conduct is protected by qualified immunity unless the very action in question has previously been held unlawful." *Cantrell v. City of Murphy*, 666 F.3d 911, 919 (5th Cir. 2012) (quoting *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009)). This has been "known since *Anderson*." *Kinney*, 367 F.3d at 350. "Indeed, '[t]here need not be commanding precedent that holds that the very action in question is unlawful; the unlawfulness need only be readily apparent from relevant precedent in sufficiently similar situations.'" *Cantrell*, 666 F.3d at 919 (quoting *Brown v. Miller*, 519 F.3d 231, 236–37 (5th Cir.

2008)); *accord Kinney*, 367 F.3d at 349–50; *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010).

"The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (adding emphasis while quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). "That is because qualified immunity is inappropriate only where the officer had 'fair notice'—'in light of the specific context of the case, not as a broad general proposition'—that his particular conduct was unlawful." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney*, 367 F.3d at 350 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Requiring "materially similar" facts is inconsistent with Supreme Court precedent. *Id.*

However, courts "must frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. The Supreme Court has "repeatedly" guided courts "not to define clearly established law at a high level of generality." *al–Kidd*, 563 U.S. at 742 (citing cases); *accord City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam). It has stated:

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640 (citations omitted). This means that it is insufficient "that a rule be suggested by then-existing precedent." *Bond*, 595 U.S. at 12. Stated slightly differently, "clearly established" means "that every reasonable official would have understood that what he is doing

violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up while omitting citation). Thus, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd*, 563 U.S. at 741. This leaves the rare possibility that, in an obvious case, analogous caselaw is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances. *Joseph*, 981 F.3d at 330.

Qualified immunity "shields an officer from suit when [the officer] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [the officer] confronted." *Brosseau*, 543 U.S. at 198. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that 'every reasonable official' would know." *Wesby*, 583 U.S. at 63–64. Under this guidance, "[q]ualified immunity is justified unless *no* reasonable officer could have acted as [the defendant officer] did here, or *every* reasonable officer faced with the same facts would *not* have [acted as the defendant officer did]." *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019); *Tucker v. City of Shreveport*, 998 F.3d 165, 174–75 (5th Cir. 2021).

**IV. ANALYSIS**

As set out above, Church alleges Grajeda engaged in two instances of excessive force: (1) Grajeda kicked Church's open food tray slot, causing the metal tray to hit Church's hands; and (2) Grajeda poured water on Church by lifting the water cooler and swinging it toward the cell door. ECF No. 1 at 3–4. Grajeda contends he is entitled to summary judgment because there is no genuine issue of material fact as to whether his actions amounted to excessive force. ECF No. 31. Grajeda further asserts he is entitled to qualified immunity. *Id.* at 9. Because Grajeda raises qualified immunity, the burden falls upon Church to raise a genuine dispute of material fact on

both inquiries of the qualified immunity defense. For the reasons explained below, Church does not meet his burden, and Grajeda is entitled to qualified immunity.

**A. First Qualified Immunity Prong: Constitutional Violation**

The well-established rule is that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Moreover, convicted inmates have a constitutional right under the Eighth Amendment to be free from the use of excessive force. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986); *Anthony v. Martinez*, 185 F. App'x 360, 363 (5th Cir. 2006) (per curiam). However, not "every malevolent touch by a prison guard" rises to the level of an Eighth Amendment violation. *Hudson*, 503 U.S. at 9.

In considering excessive force claims, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7. The term "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury, or under circumstances which show an evil intent. *See Adams v. Cantwell*, No. 6:20CV11, 2022 WL 4091967, at *10 (E.D. Tex. Aug. 2, 2022), *adopted*, 2022 WL 4082471 (E.D. Tex. Sept. 6, 2022) (citing *Douglas v. Owens*, 50 F.3d 1226, 1232–33 and n.13 (3rd Cir. 1995); *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998)). The term "sadistically" means to inflict pain for one's own pleasure. *Id.* Both these definitions are used in the Fifth Circuit's Pattern Jury Instructions for Civil Cases. *See* 5th Cir. Pattern Jury Inst., 2014 ed., sec. 10.7, pg. 106.

Several factors inform a court's analysis regarding whether force was used maliciously and sadistically to cause harm. These factors include: (1) the extent of the injury suffered; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4)

the threat reasonably perceived by the responsible officials; and (5) any effort made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 6–7. No single factor is exclusive or determinative of whether excessive force was used. *Baldwin v. Stalder,* 137 F.3d 836, 839 (5th Cir. 1998).

### 1. Grajeda's First Use of Force: Kicking Church's Food Tray Slot

For the reasons explained below, the Court finds there is no genuine dispute of material fact regarding whether Grajeda used force maliciously and sadistically to cause harm when he kicked Church's food tray slot. Grajeda is thus entitled to summary judgment as to his first use of force because Church fails to satisfy the first prong of the qualified immunity analysis.

#### a. Application of *Hudson* Factors

On balance, the *Hudson* factors weigh against Church's excessive force claim regarding Grajeda kicking the food tray slot. Even considering the evidence in the light most favorable to Church, only the first and fifth *Hudson* factors reasonably weigh in his favor. Specifically, a jury could reasonably infer based on the summary judgment evidence that Church was injured because of Grajeda's kick—he broke his right ring finger and had to wear a splint.[7] *See* ECF No. 31-2 (Ex. 1) at 14–15. Additionally, the fifth and final *Hudson* factor—the effort made to temper the severity of a forceful response—favors Church because Grajeda does not contend he made any effort at all to use less force, such as by issuing a verbal warning before resorting to kicking the food tray. *See* ECF No. 31 at 18 (Grajeda arguing that his kick was the least forceful option available and that he had to respond quickly before addressing "more pressing threats posed by the rest of the rioters").

[7] The Court is not persuaded by Grajeda's argument that Church's injuries were caused only by the earlier, unrelated use of force incident. *See* ECF No. 31 at 14. Although it is possible a jury could agree that Church's injuries were caused by the unrelated incident, the TDCJ medical records are inconclusive and do not rule out the possibility that Grajeda's kick caused Church separate injuries. *See, e.g.*, ECF No. 31-2 (Ex. 1) at 15 (TDCJ medical records stating that Church's finger fracture is "age indeterminate").

But the remaining *Hudson* factors weigh decisively against Church's excessive force claim. Regarding the second factor, the summary judgment evidence shows Grajeda needed to use force to restore discipline and maintain order. Church's bald assertion that he did "nothing to provoke" Grajeda's behavior is squarely contradicted by the video evidence, which shows Grajeda's use of force was a direct response to Church throwing his bodily fluid at Grajeda's back. *See* ECF No. 1 at 4; ECF No. 31-6 (Ex. 5) at 4:49–55. The video also reveals Church violated prison rules by jacking his food tray slot and placing his hands outside his cell—all while close custody inmates collectively engaged in disruptive and defiant behavior such as lighting fires and throwing lines to trade contraband.[8] ECF No. 31-6 (Ex. 5) at 4:49–55. Church does not rebut Grajeda's evidence showing this practice of jacking food tray slots and removing body parts from the confines of a cell violated prison rules and created a security risk. ECF Nos. 31-4 & 31-5 (Exs. 3, 4). Based on this evidence, there can be no genuine dispute that Church actively provoked a response and prompted Grajeda to take disciplinary action. *See Morris v. Hines*, No. 5:20CV36, 2021 WL 5086369, at *5 (E.D. Tex. Aug. 13, 2021) (finding second *Hudson* factor weighed in favor of officer when "the summary judgment evidence shows Plaintiff had taken control of the food slot tray and started a fire, both of which are violations of prison rules"), *adopted*, 2021 WL 4272327 (E.D. Tex. Sept. 21, 2021). Accordingly, the second *Hudson* factor—the need for application of force—favors Grajeda.

Regarding the third *Hudson* factor, the summary judgment record shows Grajeda used an appropriate amount of force in relation to the need to restore discipline and maintain order. The

---

[8] Church takes issue with the use of the word "riot" to describe the behavior of the close custody inmates, claiming that the definition of "riot" under an unattached prison policy requires that two or more inmates are physically fighting. ECF No. 37 at 6–7. To be clear, whether there was a "riot" as that term is defined by Church or prison policy does not impact the Court's excessive force analysis. When the Court uses the word "riot" in this Memorandum Opinion and Order, it is simply referring to the disruptive behavior of inmates plainly depicted in the TDCJ video.

video reveals Grajeda applied fleeting and relatively minimal force by kicking the tray slot closed; Grajeda immediately walked away after just one quick kick to the tray, and the contact between the tray and Church's hands lasted only an instant. ECF No. 31-6 (Ex. 5) at 4:56–5:02. This level of force was appropriate, given the pressing need to restore order among disruptive inmates. *See Campbell v. Atumah*, No. 6:24CV223, 2026 WL 1999906, at *19 (E.D. Tex. May 3, 2026) (finding *Hudson* factors weighed against an excessive force violation when prison official used "minimal force to gain compliance and cease the assault" of inmate), *adopted*, 2026 WL 1707618 (E.D. Tex. June 12, 2026). Furthermore, in assessing the amount of force necessary to address an active security threat, courts should not lightly second-guess an officer's decisions in hindsight. *See Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (explaining in context of excessive force claim that prison officials must be given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). The summary judgment evidence shows Grajeda had to swiftly respond to Church's rule violations while simultaneously restoring order among several disruptive inmates. *See* ECF Nos. 31-4 to 31-6 (Exs. 3–5). When affording Grajeda the appropriate level of deference, the summary judgment record simply does not support any reasonable finding that the amount of force applied through Grajeda's kick was inappropriate in relation to the need to use force. Accordingly, the third *Hudson* factor—the relationship between the need to use force and the amount of force used—favors Grajeda.

Finally, the record demonstrates that Grajeda reasonably perceived multiple threats prior to kicking Church's food tray slot. He perceived a threat of exposure to contagious diseases after being hit by Church's bodily fluid, as well as a security threat based on Church impermissibly jacking his food tray slot and placing his hands outside his cell. ECF Nos. 31-4 & 31-5 (Exs. 3–

4). Moreover, the severity of the security threat was compounded by the context of an active riot and the disruptive behavior of other close custody inmates. *See Adams v. Cantwell*, No. 6:20CV11, 2022 WL 4091967, at *10 (E.D. Tex. Aug. 2, 2022) (finding fourth *Hudson* factor weighed in favor of prison official and explaining that the official faced a "significant security problem" based on "open defiance of orders"), *adopted*, 2022 WL 4082471 (E.D. Tex. Sept. 6, 2022). Based on the foregoing evidence, the Court finds the fourth *Hudson* factor favors Grajeda because there is no genuine dispute that he reasonably perceived threats before kicking Church's food slot tray.

In sum, the competent summary judgment evidence demonstrates that at least three of the five *Hudson* factors favor Grajeda and weigh against finding that he used excessive force by kicking Church's food tray slot.

**b. The Core Judicial Inquiry**

Ultimately, the Court's analysis of Church's excessive force claim hinges on one central question—whether Grajeda used force in a good-faith effort to restore discipline, or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Here, Church has not met his burden to present competent summary judgment evidence that creates a genuine dispute of material fact regarding this core inquiry.

The summary judgment evidence shows that Church was actively violating prison rules and creating a security risk by jacking his food tray slot during a riot. *See* ECF Nos. 31-4 & 31-5 (Exs. 3–4). The evidence further establishes that, while Grajeda was attempting to address disruptive behavior of inmates such as lighting fires and slinging contraband, Church threw a bodily liquid at Grajeda's back and put him at risk of contracting a disease. ECF No. 31-6 (Ex. 5) at 4:49–:56. After being provoked, Grajeda responded by kicking Church's food tray towards the closed position and necessarily hitting Church's dangling hands. *Id.* at 4:53–5:00. The tray made

contact with Church's hands only briefly, as Grajeda immediately walked away after kicking the tray to continue addressing the active riot in the cell block. *Id.* at 4:56–5:02.

Even when viewed in the light most favorable to Church, this record only reasonably supports that Grajeda kicked Church's food tray slot to restore discipline and maintain security. Church presents no evidence showing Grajeda intentionally acted without just cause or excuse, with an intent to inflict injury, or under circumstances that show an evil intent. *See Adams,* 2022 WL 4091967, at *10 (citing *Douglas v. Owens*, 50 F.3d 1226, 1232–33 and n.13 (3rd Cir. 1995); *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998)); *see also* 5th Cir. Pattern Jury Inst., 2014 ed., sec. 10.7, pg. 106 (providing definitions for malicious and sadistic use of force). There is no evidence that Grajeda acted to inflict pain for his own pleasure. *Id.* Critically, Church does not create any genuine dispute regarding Grajeda's intent with the unsubstantiated assertion that it was "impossible" to close the door with a kick. ECF No. 37 at 6. As the Court warned Church before his response was due, he was required to provide *evidence* to meet his summary judgment burden, and unsubstantiated assertions are not sufficient to create any genuine dispute of material fact. ECF No. 32 at 1–2.

Accordingly, when viewing the competent summary judgment evidence in a light most favorable to Church, no genuine issues of material fact exist as to whether Grajeda used force maliciously or sadistically in violation of the Eighth Amendment. *See Adams*, 2022 WL 4091967, at *11 (recognizing that "[t]he absence of malicious or sadistic action for the purpose of causing harm results in a meritless claim of excessive force"); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011) (per curiam) ("On the record, we conclude that there is no evidence Valenti used force maliciously and sadistically for the purpose of causing harm."). Church thus fails to raise a

genuine dispute of material fact regarding the first prong of qualified immunity—that a constitutional violation occurred—as to Grajeda's first use of force.

**2. Grajeda's Second Use of Force: Water Cooler Incident**[9]

As a preliminary matter, the Court disagrees with Grajeda's contention that the water cooler incident "simply is not a use of force." ECF No. 31 at 11. Although Grajeda asserts the cooler was empty, the video shows that a liquid substance spreads over the floor below the cell and displaces several items. ECF No. 31-6 (Ex. 5) at 6:20–:25. Viewed in the light most favorable to Church, and in the light depicted on video, it appears the cooler was not empty and that some amount of water touched Church when Grajeda slung the cooler at the cell door. Accordingly, the Court still applies the relevant excessive force analysis to the water cooler incident, even though the cooler itself did not touch Church.

Ultimately, for the reasons explained below, the Court finds summary judgment is warranted because the evidence shows the water cooler incident involved a *de minimis* amount of force that resulted in no discernable injury. Given this state of the record, no reasonable jury could find Grajeda used force maliciously and sadistically when he poured water on Church.

**a. Application of *Hudson* Factors**

All five *Hudson* factors weigh in Grajeda's favor as to him swinging the water cooler and dumping water on Church. First, Church does not contend, and no reasonable jury could find based on the summary judgment record, that he suffered any injury from the water cooler incident. The record conclusively shows the water cooler did not make contact with Church. ECF No. 31-6 (Ex.

[9] In his motion, Grajeda describes his second use of force as "the cooler throw." ECF No. 31 at 10–11. The Court avoids this description because it risks overstating Church's excessive force allegations and mischaracterizing Grajeda's conduct. Namely, the video shows that Grajeda did not "throw" the cooler as that term is commonly understood and defined; he did not release the cooler and propel it toward Church. *See Throw*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/throw (last visited Oct. 2, 2026). Instead, he lifted the cooler and swung it at the cell door while holding it. ECF No. 31-6 (Ex. 5) at 6:18–:25.

5) at 6:12–:25. In addition, even if some amount of water touched Church, no reasonable jury could find Church was injured simply from water touching his skin. Church does not contend that the water exacerbated the injuries caused by Grajeda's kick, and there is no evidence showing any injury caused only from the water. Accordingly, there is no genuine dispute as to whether Church suffered any discernable injury from the water cooler incident, and the first *Hudson* factor weighs definitively in favor of Grajeda. *See Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

Second, the record makes clear that Church provoked a response from Grajeda when he decided to throw bodily fluid on Grajeda a second time through his jacked food tray slot. ECF No. 31-6 (Ex. 5) at 4:49. The evidence further supports that the need to respond grew more urgent after Church demonstrated he was determined to continue violating prison rules despite Grajeda's first use of force. *See Waddleton v. Rodriguez*, 750 F. App'x 248, 256 (5th Cir. 2018) (per curiam) (deciding that the second, third, and fourth *Hudson* factor favored prison official's use of force when prisoner was "uncooperative" and "resisted" discipline efforts); *Esparaza v. Kuykendall*, No. 9:17-CV-45, 2020 WL 1515751, at *4 (E.D. Tex. Mar. 30, 2020) (finding no genuine dispute that officers needed to use force when the official was "struggling with a recalcitrant prisoner"). Accordingly, the second *Hudson* factor—the need for application of force—favors Grajeda.

Third, the evidence shows that the amount of force Grajeda used during the water cooler incident was appropriate. Indeed, Grajeda used only a *de minimis* amount of force by swinging the water cooler toward the cell door and simply causing water to touch Church's skin. *See Ekpin v. Bell*, No. 2:04-CV-0036, 2004 WL 1515562, at *3 (N.D. Tex. July 6, 2004) (finding that the "force exercised by defendant . . . in pouring water on plaintiff is clearly *de minimis* and outside the scope

of the Eighth Amendment"). There can be no genuine dispute that this trivial level of force was proportionate to the real need to alleviate the threat posed by Church after he continued to throw bodily fluids and violate prison rules. *See Waddleton*, 750 F. App'x at 256 (finding third *Hudson* factor weighed against excessive force when prison official used force in response to "uncooperative" and "resist[ing]" inmate). Accordingly, the third *Hudson* factor—the relationship between the need to use force and the amount of force used—favors Grajeda.

Fourth, the evidence establishes that Grajeda reasonably perceived a threat when Church threw bodily fluid at him a second time. In addition to the risk of contracting a disease, Church continued to pose a security risk by jacking his food tray slot and hanging his arms outside his cell. ECF No. 31-6 (Ex. 5) at 6:05–:11; ECF Nos. 31-4 & 31-5 (Exs. 3–4). And these risks became more pressing the moment Church decided to throw his bodily fluid a second time, even following Grajeda's first use of force. *Waddleton*, 750 F. App'x at 256; *see also Adams v. Cantwell*, No. 6:20CV11, 2022 WL 4091967, at *10 (E.D. Tex. Aug. 2, 2022) (finding fourth *Hudson* factor weighed in favor of prison official and explaining that official faced a "significant security problem" based on "open defiance of orders"), *adopted*, 2022 WL 4082471 (E.D. Tex. Sept. 6, 2022). Accordingly, the fourth *Hudson* factor—the threat reasonably perceived by the responsible officials—favors Grajeda.

The final *Hudson* factor—the effort made to temper the severity of a forceful response—also favors Grajeda. Because Grajeda used a *de minimis* amount of force during the water cooler incident, there can be no genuine dispute that he should have tried to use less force. Short of refraining from using any force at all, Grajeda could not have chosen a less forceful response than a response that led only to, at most, some amount of water falling on Church's skin. *Cf. Just. v. Price*, No. 6:23CV016, 2025 WL 2552296, at *5 (E.D. Tex. July 28, 2025) (finding use of pepper

spray to an inmate's face constituted "minimal force" when inmate refused orders to return to cell), *adopted*, 2025 WL 2552182 (E.D. Tex. Sept. 3, 2025).

In sum, all five *Hudson* factors favor Grajeda and demonstrate that no reasonable jury could find he used excessive force when he swung the water cooler and poured water on Church.

**b. The Core Judicial Inquiry**

Applying the "core judicial inquiry" requires the Court to reject Church's excessive force claim regarding the water cooler incident. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Based on the summary judgment record, no reasonable jury could conclude that Grajeda applied force maliciously or sadistically to cause harm. *Id.* Indeed, as discussed above, there is no evidence—or even a contention from Church—that the water cooler incident itself caused harm. *See Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."); *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (standing for the principle that "*de minimis* uses of physical force" are necessarily excluded from constitutional recognition, provided the use of force is not "repugnant to the conscience of mankind").

Moreover, Church presents no evidence at all showing Grajeda intentionally acted without just cause or excuse, with an intent to inflict injury, or under circumstances that show an evil intent. *See Adams*, 2022 WL 4091967, at *10 (citing *Douglas v. Owens*, 50 F.3d 1226, 1232–33 and n.13 (3rd Cir. 1995); *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998)); *see also* 5th Cir. Pattern Jury Inst., 2014 ed., sec. 10.7, pg. 106 (providing definitions for malicious and sadistic use of force). There is also no evidence that Grajeda acted to inflict pain for his own pleasure when he poured water on Church. *Id.* Instead, the evidence only reasonably shows that Grajeda acted in

response to Church continuously violating prison rules, and under circumstances requiring Grajeda to restore order.

Accordingly, no genuine issues of material fact exist as to whether Grajeda used force maliciously or sadistically when he swung the water cooler and poured water on Church, and Church's excessive force claim thus fails as a matter of law. *Adams*, 2022 WL 4091967, at *11; *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011) (per curiam).

**B. Second Qualified Immunity Inquiry: Clearly Established Law**

As explained above regarding both alleged instances of excessive force, the summary judgment record leaves no genuine dispute of material fact regarding whether Grajeda committed a constitutional violation. Church has not met his burden to create any genuine dispute that Grajeda applied force "maliciously" or "sadistically" when he kicked the food tray slot or when he poured water on Church from the water cooler. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Accordingly, Church has not created a genuine dispute regarding the first prong of qualified immunity, and Grajeda is thus entitled to summary judgment on Church's excessive force claim. *See Buehler v. Dear*, 27 F.4th 969, 981–82 (5th Cir. 2022) (explaining that, once a defendant properly raises qualified immunity, the burden is on the plaintiff to establish both prongs of the qualified immunity inquiry); *Poole v. City of Shreveport*, 691 F.3d 624, 627–28 (5th Cir. 2012) (same).

But even if Church had satisfied the first qualified immunity prong, Grajeda would still be entitled to qualified immunity based on the second prong for both alleged instances of excessive force. Church has not shown that Grajeda's conduct was objectively unreasonable in light of clearly established Eighth Amendment law. *Tucker v. City of Shreveport*, 998 F.3d 165, 172–73 (5th Cir. 2021); *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). In other words, Church has not pointed to any authority putting an officer on notice that

Grajeda's particular conduct, under the specific circumstances of this case, was unlawful. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam); *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019).

Accordingly, even assuming a constitutional violation occurred, Church does not defeat Grajeda's qualified immunity defense. Grajeda is entitled to summary judgment.

**V. CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant Emmanuel Grajeda's Motion for Summary Judgment (ECF No. 31). By separate document, the Court will enter a Final Judgment dismissing this action.

**IT IS SO ORDERED.**

**SIGNED this 15th day of October 2026.**



**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**